OPINION OF THE COURT
Jonah Triebwasser, J.
There are no true villains in this case, only victims.
*987 On the morning of December 30, 2015, the complaining witness was minding her own business, jogging along a public highway in the Town of Red Hook, when she was the victim of an unprovoked, brutal and vicious attack by two Cane Corso dogs named Tank and Gemma, each weighing in excess of 100 pounds, each belonging to defendant, each having gotten loose from defendant’s property and control. The attack, as described in the sworn testimony in open court, was reminiscent of the one in Sir Arthur Conan Doyle’s The Hound of the Baskervilles. The attack only ceased when a motorist, apparently the defendant, came along and took control of the dogs.
Defendant herself was a victim, a victim of surprise as there was no testimony that she had any prior indiction that these dogs would be dangerous to humans. Defendant produced seven witnesses who all testified credibly that the dogs were always well-behaved in their presence.
The dogs themselves were victims, victims of some inbred calling of ancient days past when the sight of a creature running meant that it was prey to be chased and pounced upon.
The Agriculture and Markets Law, in section 108 (24) (a) (i), defines a dangerous dog as: “any dog which . . . without justification attacks a person . . . and causes physical injury or death.”
Agriculture and Markets Law § 108 (28) defines physical injury as: “impairment of physical condition or substantial pain.”
The attack victim was taken to Northern Dutchess Hospital where she was examined. So profound was her pain that she was administered morphine for relief; so grievous were her injuries that it was determined that she had to be further transported to Albany Medical Center for extensive surgery which ultimately involved more than 100 stitches to close her gaping wounds, including deep major tissue tearing on her posterior left leg. After surgery, the complaining witness was an inpatient at Albany Medical Center for six days. Her uncontradicted testimony in court was that she could not feel her left leg due to nerve damage. She further testified that, since the attack, she is generally confined to bed and that she can only walk if she uses a “walker” and only with great pain and difficulty. She testified that part of her leg muscle is missing and that she will have to have further surgery.
Clearly, the injuries describe in the sworn testimony and in the medical records in evidence show that the attack impaired the victim’s physical condition and caused her substantial pain. *988 Therefore, it is the finding of the court that these are dangerous dogs.
The question now becomes what to do with these dogs.
Section 123 (3) of the Agriculture and Markets Law authorizes the court to take the following action:
“Upon a finding that a dog is dangerous, the judge or justice may order humane euthanasia or permanent confinement of the dog if one of the following aggravating circumstances is established at the judicial hearing held pursuant to subdivision two of this section:
“(a) the dog, without justification, attacked a person causing serious physical injury or death.”
Agriculture and Markets Law § 108 (29) defines serious physical injury as: “physical injury which creates a substantial risk of death, or which causes death or serious or protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.”
Again, the evidence clearly indicates that the victim will suffer serious and protracted disfigurement due to the 100-plus stitches used to close her wounds and the possibility of permanent impairment of her ability to walk unaided in the future. The victim’s grievous physical injuries are serious under the controlling definition. Quite frankly, it is the view of the court that, if the attack had not been interrupted by the motorist, the risk of death on that day was substantial.
Defendant urges the court to spare the lives of these dogs by ordering a variety of remedies such as confinement and enhanced training. The horrendous nature of the attack herein gives the court pause to believe that such confinement and enhanced training would be adequately protective of the public interest and safety. The dogs attacked the victim after escaping confinement on defendant’s property. There is no guarantee that the dogs will not escape again or that the enhanced training will absolutely prevent such an attack in the future. There is only one remedy that will assure that such a vicious attack will not happen again.
It is the order of this court that the dogs, known as Tank and Gemma, shall be humanely euthanised, pursuant to Agriculture and Markets Law § 123 (3).
It is the further order of this court that defendant shall pay a penalty of $1,500 pursuant to Agriculture and Markets Law § 123 (7), such amount to be reduced by any amount which shall be paid to the victim as restitution for unreimbursed *989 medical expenses, lost earnings and such other damages as the victim may have suffered from the injuries caused by the dogs in question.
The order of this court is automatically stayed for 30 days pursuant to Agriculture and Markets Law § 123 (3) to allow defendant to consider the filing of an appeal. The dogs are to be confined by the Animal Control Officer of the Town of Red Hook during the pendency of any appeal or until such time as the humane euthanasia can be completed.
Pursuant to Agriculture and Markets Law § 123 (2), in the event that the portion of this decision ordering humane euthanasia is overturned on appeal, defendant is hereby ordered to neuter or spay the dogs, “microchip” the dogs, and:
“(a) [have an] evaluation of the dog[s] by a certified applied behaviorist, a board certified veterinary behaviorist, or another recognized expert in the field and completfe] . . . training or other treatment as deemed appropriate by such expert. The owner of the dog[s] shall be responsible for all costs associated with evaluations and training ordered . . . ;
“(b) [institute permanent] secure, humane confinement of the dog[s] for a period of time and in a manner . . . designed to: (1) prevent escape of the dog[s], (2) protect the public from unauthorized contact with the dog[s], and (3) to protect the dog[s] from the elements pursuant to section three hundred fifty-three-b of this chapter. Such confinement shall not include lengthy periods of tying or chaining;
“(c) restraint ] . . . the dog[s] on a leash by an adult of at least twenty-one years of age whenever the dog[s] [are] on public premises;
“(d) muzzl[e] the dog[s] whenever [they are] on public premises in a manner that will prevent [them] from biting any person or animal, but that shall not injure the dog[s] or interfere with [their] vision or respiration; [and]
“(e) [maintain] ... a liability insurance policy in [the] amount ... of one hundred thousand dollars [($100,000) per dog] for personal injury or death resulting from an attack by such dangerous dog[s].”